Matter of Drake v Drake (2020 NY Slip Op 04016)





Matter of Drake v Drake


2020 NY Slip Op 04016


Decided on July 17, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 17, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


34 CAF 19-01058

[*1]IN THE MATTER OF JOHN L. DRAKE, PETITIONER-RESPONDENT,
v
ANN M. DRAKE, RESPONDENT-APPELLANT. 






D.J. & J.A. CIRANDO, PLLC, SYRACUSE (JOHN A. CIRANDO OF COUNSEL), FOR RESPONDENT-APPELLANT.


 Appeal from an order of the Family Court, Cattaraugus County (Moses M. Howden, J.), entered November 20, 2018 in a proceeding pursuant to Family Court Act article 4. The order, inter alia, denied the objections of respondent to an order of the Support Magistrate. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 4, respondent mother appeals from an order denying her written objections to the order of the Support Magistrate, which modified a prior order of support and continued the provision of the parties' separation agreement, which was incorporated but not merged into their judgment of divorce, requiring the mother and petitioner father to contribute to their children's college expenses. We affirm.
The mother objected to the Support Magistrate's determination to impute income to her on the ground that the Support Magistrate failed to consider the totality of the circumstances, including that the mother had "experienced difficulty in maintaining employment in her field of occupation" and had never earned in excess of $55,000 working as a dental hygienist. The mother alleged that she was impacted by the turnover that was typical in her field and also by her "deteriorating health" and that the Support Magistrate also failed to consider that the mother "incurred significant liabilities," such as debts to the state and federal governments. The mother further alleged that it was a financial impossibility for her to contribute toward the college expenses of the children and that the father was "in a much better position to pay for college expenses than the [mother]."
Initially, we reject the contention of the mother that the Support Magistrate erred in imputing income to her for the purpose of calculating her child support obligation. It is well settled that
" [c]ourts have considerable discretion to . . . impute an annual income to a parent' " (Lauzonis v Lauzonis, 105 AD3d 1351, 1351 [4th Dept 2013]; see Matter of Monroe County Support Collection Unit v Wills, 21 AD3d 1331, 1332 [4th Dept 2005], lv denied 6 NY3d 705 [2006]). Furthermore, "child support is determined by the parents' ability to provide for their child rather than their current economic situation" (Irene v Irene [appeal No. 2], 41 AD3d 1179, 1180 [4th Dept 2007] [internal quotation marks omitted]; see Matter of Bashir v Brunner, 169 AD3d 1382, 1383 [4th Dept 2019]), and "a court's imputation of income will not be disturbed so long as there is record support for its determination" (Lauzonis, 105 AD3d at 1351).
"[I]n determining a party's child support obligation, a court need not rely upon the party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated earning potential" (Belkhir v Amrane-Belkhir, 118 AD3d 1396, 1397 [4th Dept 2014] [internal quotation marks omitted]). Courts may impute income based on a party's [*2]employment history, future earning capacity, educational background, or money received from friends and relatives (see Matter of Deshotel v Mandile, 151 AD3d 1811, 1812 [4th Dept 2017]; Matter of Rohme v Burns, 92 AD3d 946, 947 [2d Dept 2012]).
Here, the Support Magistrate did not abuse her discretion by imputing income to the mother, who was working only part time and had received substantial sums of money from others, including $14,871 from the father pursuant to the parties' separation agreement, $5,000 from her second husband upon their divorce, and $20,000 in proceeds from the sale of her house in 2012. The record demonstrates that, although the mother was able to work full time and had done so in the past, she was working a maximum of 32 hours per week. Historically, however, when the mother was not able to obtain full-time hours from a single employer in her field, she supplemented her income by working nights and weekends as a waitress or retail clerk or by working at multiple dental offices. Contrary to the mother's contention that she experienced difficulty in maintaining employment as a dental hygienist due to the turnover that is typical in the industry, the record establishes that the mother was repeatedly terminated by employers for cause. To the extent the mother's financial circumstances were self-created, they provide no basis for disturbing the Support Magistrate's determination (see Matter of Grettler v Grettler, 12 AD3d 602, 603 [2d Dept 2004]).
The record does not support the mother's contention that her ability to work full time is impacted by her "deteriorating health." The mother's testimony was not substantiated or corroborated by any medical evidence, and "[t]he Support Magistrate was not obliged to accept the [mother's] unsupported testimony that a medical condition prevented [her] from working" full time (Matter of Niagara County Dept. of Social Servs. v Hueber, 89 AD3d 1433, 1434 [4th Dept 2011], lv denied 18 NY3d 805 [2012] [internal quotation marks omitted]; see Matter of Michelle F.F. v Edward J.F., 50 AD3d 348, 349 [1st Dept 2008], lv denied 11 NY3d 708 [2008]).
We reject the further contention of the mother that the Support Magistrate abused her discretion in imputing income to the mother based on her 2017 income. In 2017, the mother worked at two dental offices earning $31 and $32 per hour, respectively, for a combined full-time schedule and income. Although the mother took a job in Olean in October 2017 and "voluntarily reduced her income . . . in an effort to be closer to her children," she was terminated from that job in 2018 and moved away from the children to live in Syracuse. Thus, the Support Magistrate's imputation of additional income to the mother at a rate of $30 per hour for eight hours per week, representing the difference between the mother's part-time salary and the full-time salary that she is capable of earning, is a fair representation of the mother's demonstrated earning capacity (see Rohme, 92 AD3d at 947; Wills, 21 AD3d at 1332).
The mother's contention that she proved that the parties' oldest child is constructively emancipated is not preserved for our review inasmuch as it is raised for the first time on appeal (see Hueber, 89 AD3d at 1434; see also Rodman v Friedman, 112 AD3d 537, 537-538 [1st Dept 2013]). In any event, that contention lacks merit because the mother failed to demonstrate that the child actively abandoned her by refusing all contact and visitation (see Matter of Barlow v Barlow, 112 AD3d 817, 818 [2d Dept 2013]; Matter of Burr v Fellner, 73 AD3d 1041, 1041 [2d Dept 2010]). Furthermore, where, as here, "it is the parent who causes a breakdown in communication with the child, or has made no serious effort to contact the child and exercise his or her visitation rights, the child will not be deemed to have abandoned the parent" (Melgar v Melgar, 132 AD3d 1293, 1294 [4th Dept 2015] [internal quotation marks omitted]).
Finally, because the mother failed to contend in her written objections to the order of the Support Magistrate that the enforcement of the provision of the parties' separation agreement requiring contribution to the children's college expenses is premature, excessive, and in violation of the Child Support Standards Act, and inasmuch as the mother did not challenge the Support Magistrate's determination of arrears on the ground that "the record indicates that [she] did not willfully violate the agreement," those contentions are not properly preserved (see Family Ct Act § 439 [e]; Matter of Farruggia v Farruggia, 125 AD3d 1490, 1490 [4th Dept 2015]; Matter of White v Knapp, 66 AD3d 1358, 1359 [4th Dept 2009]).
Entered: July 17, 2020
Mark W. Bennett
Clerk of the Court